UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUE LE,<br><br>      Plaintiff,<br>  v.<br><br>APPLE INC.,<br><br>      Defendant. | **COMPLAINT**<br><br>**Case No. 24-CV-7535**<br><br>**ECF Case** |

COMES NOW PLAINTIFF HUE LE, by her undersigned attorney, for her Complaint against Defendant Apple Inc. and alleging as follows:

## NATURE OF THE ACTION

1. This is an action for discrimination and retaliation in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, on the grounds that Defendant wrongfully terminated Plaintiff's employment based on sex, actual or perceived disability, and retaliation for requesting a modified work schedule. By this action, Plaintiff seeks all legal and equitable relief, including back pay, front pay, reinstatement, out of pocket costs, compensatory damages, punitive damages, civil penalties, and attorney's fees and costs. Plaintiff demands trial by jury.

## PARTIES

2. Plaintiff **Hue Le ("Le")** is an adult resident of Brooklyn, New York. For purposes of this action, Le is a citizen of New York. Le is female.

3. At all relevant times, Le was an "employee" of Defendant within the meaning of the city and state human rights laws.

4. Defendant **Apple Inc. ("Apple")** is a California corporation with its principal place of business at One Apple Park Way, Cupertino, California. For purposes of this action, Apple is a citizen of California.

5. At all relevant times, Apple was Plaintiff's "employer" within the meaning of the city and state human rights laws.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity), because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

8. On or about June 7, 2023, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). The charge was assigned case number 520-2023-05682.

9. The EEOC subsequently referred the charge to the New York State Division of Human Rights ("DHR") for investigation.

10. On April 29, 2024, the DHR issued a Determination and Order of Dismissal for Administrative Convenience, a copy of which is attached hereto as Exhibit 1.

11. The DHR dismissal expressly states that "where the Division has dismissed such complaint on the grounds of [] administrative convenience . . . such

person shall maintain all rights to bring suit as if no complaint had been filed." Exhibit 1 (citing New York State Human Rights Law § 297.9).

## ALLEGATIONS

12. This Complaint provides an overview of Plaintiff's allegations against Defendant but does not necessarily include every person, incident, comment, or other facts relevant to her claims.

13. Le was employed by Apple Inc. from September 11, 2015, until her wrongful termination on or about January 16, 2023.

14. Le worked at the Apple Store in Grand Central Station, New York, New York.

15. Le started as Product Zone Manager, then in February 2022 became Genius Bar Manager. As Genius Bar Manager, her main job duties included training, developing, and coaching service technicians to provide the best customer service.

16. At all relevant times, Le was qualified for her position and performed her duties in a satisfactory manner. She received "achieved expectations" ratings on her written performance evaluations.

17. Le's total compensation at Apple exceeded $100,000 per year for 2020, 2021, and 2022.

18. Le was on approved medical leave from July 5, 2022, to January 2, 2023, for mental health-related conditions.

19. In conjunction with this medical leave, Le received short-term disability benefits from July 12, 2022, to January 1, 2023.

20. Le's diagnoses included anxiety and depression, for which she was prescribed medication by a psychiatrist and received weekly therapy with a LCSW.

21. At all relevant times, Le's mental health-related conditions constituted a "disability" within the meaning of the city and state human rights laws insofar, inter alia, as she had a mental or psychological impairment that was demonstrable by medically accepted clinical or laboratory diagnostic techniques and/or had a record of such impairment.

22. Following her return from medical leave, Le would have been able to perform the activities of her position with a reasonable accommodation – a temporary modified work schedule.

23. Shortly before her scheduled return to work, Le informed her managers that her therapist was recommending that she follow a modified work schedule for several weeks before resuming full-time employment.

24. Le's therapist communicated this request to Defendant's benefits processor (Sedgwick Claims Management Services) by letter dated December 27, 2022, and Le so advised her manager (Jeff Zweiman) by text message on December 28, 2022. Zweiman replied the same day: "Sedgwick sent over an update last night as well. I'll partner to see what is possible for the schedule but let's assume that it will all be approved."

25. Upon information and belief, Zweiman subsequently discussed Le's request for a temporary modified work schedule with higher-level managers, who were opposed to the request.

26. Notably, Le had been on a reduced work schedule before taking medical leave in July 2022, and she was subjected to hostility by higher-level managers who demanded that she do a full amount of work, despite being on a

4

reduced work schedule, which was one of the reasons she needed to take medical leave.

27.     The company culture at the Grand Central store where Le worked, which was fostered by the top-level managers, definitely frowned upon employees who needed to take medical leave or be accommodated in the workplace.

28.     Around the time that Le was experiencing the mental health-related conditions that resulted in her going on medical leave, Le asked two of her coworkers (who were sisters) to take care of her pet dog (a new Cavapoo puppy) until Le was feeling better.  Le said that she would reimburse them for the dog's food and vet bills.  The coworkers agreed, and understood that this was supposed to be a temporary arrangement.

29.     The coworkers were in non-manager positions junior to Le, but she did not supervise them (nor could she have, being out on medical leave).

30.     Although Le fulfilled her part of their agreement, the two coworkers did not.

31.      On or about September 30, 2022, when Le texted the two coworkers to tell them that she was ready to take the dog back, they flatly refused to return the dog to her.  They argued that they had developed a relationship with the dog and wanted to keep it.

32.     The dispute over the dog became contentious, with Le subsequently filing a police report against the two coworkers and hiring an attorney to pursue the matter.  Eventually the two coworkers relented and returned the dog to Le.

33.     Unbeknownst to Le, on or about October 2, 2022, the two coworkers made a complaint about Le to Apple, complaining about Le's threats to file a police report and/or take legal action against them over the dog.

34. Le was not notified or questioned about this complaint until she was preparing to return to work in January 2023, and after she had requested a temporary modified work schedule.

35. Specifically, Le was informed of the complaint during a telephone call with two of her store managers (Jeff Zweiman and David Toma) on January 2, 2023. During that call, Le was accused of violating company policy, which she disagreed with, and threatened with corrective action or termination. Le protested to no avail.

36. Le was terminated by Zweiman by letter dated January 16, 2023, which alleged that Le was being fired for violating the company's Significant Personal Relationships policy.

37. The Significant Personal Relationships policy provided that "[e]mployees may not have a significant personal relationship with anyone with whom they have a reporting or Apple business relationship." "Significant personal relationships" was defined to include (but was not limited to) "spouses, domestic partners, family members, dating or physical relationships, close friends, and business relationships outside of Apple." "Reporting relationships" was denied as "anyone in your direct reporting line or in your organization with whom you have influence over performance, employment or compensation decisions."

38. Apple's reliance on the Significant Personal Relationships policy to justify terminating Le's employment was a pretext to cover up discriminatory treatment based on sex, actual or perceived disability, and/or retaliation for requesting a modified work schedule.

39. On its face, the policy did not apply to the situation between Le and the two coworkers. They were not engaged in a prohibited personal or business relationship, nor were the two coworkers in Le's direct reporting line, nor did Le

6

(who was on medical leave throughout the controversy) have influence over their employment, compensation, or performance. Moreover, the two coworkers subsequently recanted their complaint against Le.

40. The company culture at the Grand Central store, which was fostered by the top-level managers – including most importantly Flag Leader Mary Kate Gallagher, who was well known for not liking women – definitely favored men.

41. Upon information and belief, discovery will show that Gallagher was the Apple manager who made the decision to terminate Le's employment.

42. During Le's employment at the Grand Central store, there were several male supervisory employees (not disabled, to Plaintiff's knowledge) who engaged in personal and/or business relationships with subordinate employees and whose conduct was widely known within the Grand Central store but who were not disciplined in any way.

43. These comparator situations included a Senior Leader who had sex with a team member and (it was rumored) with a store manager; this same person was close friends with one of his supervisors; a Manager who was close friends with multiple Senior Managers, including having dinner at their homes and helping them with personal chores; a store manager's husband regularly fraternizing with and engaging in business dealings with team members; and, most ironically, a Senior Leader who had his pet dog cared for by a junior manager on multiple occasions. None of these male managers was disciplined, let alone terminated, for violating the Significant Personal Relationships policy.

44. Upon information and belief, discovery will show the facts of these comparator situations, that none of the male managers involved were disciplined,

7

and that they were known to – and ignored by – the same supervisory officials who made or influenced the decision to terminate Le.

45. In sum, Apple's reliance on the Significant Personal Relationships policy was a pretext to justify Le's termination that in fact was motivated by discriminatory and/or retaliatory animus based on sex, actual or perceived disability, and/or retaliation for requesting a modified work schedule.

46. Le's actual and anticipated damages exceed the sum or value of $75,000, exclusive of interest and costs.

## CLAIMS FOR RELIEF

47. Based on the factual allegations set forth above, along with reasonable inferences drawn in Plaintiff's favor, Plaintiff asserts the following claims against Defendant:

48. Count One: Wrongful termination, sex discrimination, in violation of the New York City Human Rights Law;

49. Count Two: Wrongful termination, sex discrimination, in violation of the New York State Human Rights Law;

50. Count Three: Wrongful termination, disability discrimination, in violation of the New York City Human Rights Law;

51. Count Four: Wrongful termination, disability discrimination, in violation of the New York State Human Rights Law;

52. Count Five: Wrongful termination, retaliation, in violation of the New York City Human Rights Law;

53. Count Six: Wrongful termination, retaliation, in violation of the New York State Human Rights Law;

54. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which she is entitled to an award of back pay, front pay, reinstatement, out of pocket costs, compensatory damages, punitive damages, civil penalties, and attorney's fees and costs.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment against Defendant on her claims under the New York City Human Rights Law and the New York State Human Rights Law, and award her the following relief:

A. Back pay in an amount to be determined at trial;

B. Front pay (or reinstatement) in an amount to be determined at trial;

C. Compensatory damages in an amount to be determined at trial;

D. Punitive damages in an amount to be determined at trial;

E. Civil penalties in an amount to be determined at trial;

F. Pre-judgment and post-judgment interest as allowed by law;

G. Attorney's fees, costs, and disbursements; and

    H.    Such other relief as law and justice may require.

Dated:    October 4, 2024

                      Respectfully submitted,

                      /s/ *Steven M. Warshawsky*

By:    _____
                      STEVEN M. WARSHAWSKY
                      The Warshawsky Law Firm
                      *Attorney for Plaintiff*
                      118 North Bedford Road, Suite 100
                      Mount Kisco, New York  10549
                      Tel:  (914) 864-3353
                      Email:  smw@warshawskylawfirm.com
                      Website:  www.warshawskylawfirm.com